**DELTA AIR LINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent,**

**Committee of Former Northeast**
**Stewardesses, Intervenor.**

**No. 76–1901.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 4, 1977.

Decided Jan. 20, 1978.

Frank F. Rox and Robert S. Harkey, Atlanta, Ga., with whom Robert Reed Gray, Washington, D. C., was on the brief, for petitioner.

Barbara Thorson, Atty., C. A. B., Washington, D. C., with whom James C. Schultz, Gen. Counsel, Jerome Nelson, Deputy Gen. Counsel, Glen M. Bendixsen, Associate Gen. Counsel, C. A. B. and Carl D. Lawson and Daniel J. Conway, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondent.

J. Gordon Forester, Jr., Washington, D. C., for intervenor.

Before BAZELON, Chief Judge, TAMM and WILKEY, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In June 1974, a Committee of Former Northeast Stewardesses (Committee) petitioned the Civil Aeronautics Board (Board) to direct Delta Air Lines, Inc., to submit to arbitration the integration of stewardess seniority lists following the merger of Northeast Airlines, Inc., into Delta. This appeal arises from the order of the Board granting the Committee's petition.[1] The basic question before this court is whether the Board abused its discretion by referring to the arbitrator the procedural issue of timeliness of the request for arbitration, rather than deciding that issue on the record before it. For the reasons stated below, we affirm the Board's order.

---

1. CAB Order 76–9–129 (Sept. 23, 1976), Joint Appendix (J.A.) at 17. This appeal was filed pursuant to 49 U.S.C. § 1486(a) (1970).

## I

In the spring of 1972, the Board approved the merger of Delta and Northeast, subject to certain labor protective provisions (LPP's).[2] Section 3 of those provisions states:

Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13.[3]

Section 13(a) provides that any party may refer a dispute arising under the LPP's to an arbitrator, and that "a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties."[4]

Prior to the merger, which became effective on August 1, 1972, the Transport Workers Union of America, AFL–CIO (TWU) had been the collective bargaining representative for the Northeast stewardesses. Between midsummer and early October of 1972, representatives of Delta and Delta stewardesses had a series of meetings with a group of former Northeast stewardesses to negotiate the integration of seniority lists, but no agreement was reached. During the month of October, Delta unilaterally integrated the seniority lists and informed all stewardesses of the results of that integration by letter dated October 31, 1972.[5]

In the meantime, after the impasse had developed in negotiations, the negotiating group of former Northeast stewardesses asked TWU to pursue their arbitration remedy. On September 29, 1972, TWU informed Delta that it intended "to seek the appropriate relief,"[6] and on October 4, 1972, requested the National Mediation Board to furnish a panel of arbitrators for the integration dispute.[7] Delta, however, refused to participate in the selection of an arbitrator, on the ground that TWU had not provided any evidence that it continued to represent any former Northeast stewardesses after the effective date of the merger.[8]

On January 30, 1973, TWU, on behalf of the stewardesses formerly employed by Northeast, petitioned the Board to direct arbitration of seniority list integration. Delta opposed the petition, still basing its opposition to arbitration on TWU's failure to demonstrate its representational capacity. In an order dated September 11, 1973, the Board dismissed TWU's petition. The Board held that TWU was not the representative of the former Northeast employees under the LPP's merely because it was their collective bargaining representative prior to the merger.[9] Furthermore, since Delta conceded its duty to arbitrate the seniority dispute upon demand of dissatisfied stewardesses or their authorized representative, the Board found that its immediate intervention was unnecessary.[10] In a footnote, the Board specifically addressed Delta's contention that no timely complaint against the integrated seniority list had been filed under the LPP's, stating that such issues "are appropriate matters for resolution in the context of negotiation or an arbitration proceeding. . . ."[11]

Because TWU did not appeal the Board's order or attempt to present evidence to Delta of its representational authority, the

2. CAB Orders 72–5–73/74 (April 24, 1972), J.A. at 76, 79.

3. *Id.*, Appendix I at 1, J.A. at 65.

4. *Id.*, Appendix I at 9, J.A. at 73.

5. J.A. at 137.

6. *Id.* at 83.

7. *Id.* at 95, 100.

8. *Id.* at 106.

9. CAB Order 73–9–42 at 5 (Sept. 11, 1973), J.A. at 9.

10. *Id.* at 4, J.A. at 8.

11. *Id.* at 4 n.5, J.A. at 8 n.5.

Committee, which has intervened on this appeal, was formed to pursue arbitration. To that end, the Committee hired an attorney and sought representational authorization from other dissatisfied stewardesses.[12] In a series of letters to Delta from March through May of 1974, the Committee requested that the seniority list integration dispute be submitted to arbitration, contending, in part, that the present request was "a continuum of those made of Delta as far back as October, 1972."[13] Delta renewed its assertion that the complaint was untimely,[14] and the Committee petitioned the Board to compel arbitration.

After an initial dismissal of the petition,[15] an appeal from that order, and a remand by this court for a decision on the merits,[16] the Board granted the Committee's petition and ordered arbitration. In its mandate to the arbitrator, the Board included the initial "jurisdictional" question of "whether, under all of the circumstances, the claim to arbitration was asserted within a reasonable time."[17] In justifying the delegation of the timeliness issue to the arbitrator, the Board stated that, on the basis of the inadequate record before it, it was unable definitively to resolve certain issues which were possibly pertinent to the merits of Delta's timeliness argument, such as the representational aspects of the dispute, the possibility that Delta contributed to delay, and the effect of Delta's actual knowledge of employee dissatisfaction.[18] Such issues, the Board stated, are the type "in which an experi-

enced labor arbitrator may well be able to shed more light, more quickly than the Board."[19] We are now called upon to review the Board's decision to refer the timeliness issue to arbitration.

## II

In our review, we must initially determine whether the Board has the discretion to delegate procedural issues arising under the LPP's, such as timeliness of arbitration complaints, to an arbitrator. If the Board does have such discretion and acted within its scope, we must then decide, on the basis of the administrative record, whether the Board abused its discretion. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971);[20] *see* 5 U.S.C. § 706(2)(A) (1970).

■ It is clear that the Board has the authority to impose conditions on its approval of the merger of air carriers, *Kent v. CAB*, 204 F.2d 263, 265 (2d Cir.), *cert. denied*, 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953); *see* 49 U.S.C. § 1378(b) (1970), and that these conditions may include the duty to negotiate and arbitrate disputes over the integration of seniority lists of employees affected by the merger. *Outland v. CAB*, 109 U.S.App.D.C. 90, 94, 284 F.2d 224, 228 (1960). In *American Airlines, Inc. v. CAB*, 445 F.2d 891, 895 (2d Cir. 1971), *cert. denied*, 404 U.S. 1015, 92 S.Ct. 674, 30 L.Ed.2d 663

12. J.A. at 207.

13. *Id.* at 187; *see id.* at 183, 189.

14. *Id.* at 187.

15. CAB Order 75–1–6 (Jan. 2, 1975), J.A. at 12. In this order, the Board stated that the courts, rather than the Board, were the proper forums for seeking enforcement of arbitration clauses in LPP's. It also made specific reference to the footnote in its earlier order in which it had posited that the issue of timeliness should be dealt with in arbitration. *Id.* at 2–3, J.A. at 13 n.3, 14.

16. *Committee of Former Northeast Stewardesses v. CAB*, No. 75–1066 (D.C. Cir. May 27, 1975).

17. CAB Order 76–9–129 at 5 (Sept. 23, 1976), J.A. at 21.

18. *Id.* at 4–5, J.A. at 20–21.

19. *Id.* at 5, J.A. at 21.

20. In *Citizens to Preserve Overton Park*, the Supreme Court also suggested a third inquiry for review of an agency's informal adjudication—whether the agency "followed the necessary procedural requirements." 401 U.S. at 417, 91 S.Ct. 814. However, in this case there is no contention that the Board's procedures were inadequate or erroneous.

(1972), the court sanctioned the arbitration of such substantive disputes under LPP's, stating, in part:

> The Board, like other agencies, operates on a limited budget, both of money and of time; it may properly decide that these scarce resources should be husbanded for the tasks for which it considers itself to be expert, rather than frittered away in an area more suitable for an experienced labor arbitrator.

When called upon to interpret negotiated labor contracts, courts have repeatedly held that procedural issues, such as whether grievances were properly and timely filed, should be delegated to arbitration along with the substantive issues of labor disputes. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *accord, Tobacco Workers International Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 953–54 (4th Cir. 1971); *Rochester Telephone Corp. v. Communication Workers of America*, 340 F.2d 237, 238–39 (2d Cir. 1965). One rationale for approval of the delegation of procedural issues to arbitration is that the substantive and procedural aspects of labor controversies are normally so intertwined that dividing their resolution between arbitrators and courts would cause unnecessary delay and duplication of effort. *John Wiley & Sons v. Livingston*, 376 U.S. at 557–58, 84 S.Ct. 909. Furthermore, questions as to whether the procedural prerequisites to arbitration have been met "do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it." *Id.* at 556–57, 84 S.Ct. at 918. Therefore, the knowledge and expertise of an experienced labor arbitrator may be just as necessary to the efficacious disposition of the procedural problems of an arbitrable dispute as to the resolution of the substance of the labor controversy itself. *Association of Industrial Scientists v. Shell Development Co.*, 348 F.2d 385, 389 (9th Cir. 1965); *see Carey v. General Electric Co.*, 315 F.2d 499, 503 (2d

Cir. 1963), *cert. denied*, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964).

■ The reasoning of these labor contract decisions is equally applicable to procedural disputes arising under LPP's imposed by the Board during mergers. Just as under negotiated labor contracts, both the procedural and substantive issues under the LPP's normally involve labor relations law and custom, subjects in which the Board has neither experience nor specialized knowledge. *See Outland v. CAB*, 284 F.2d at 228. Once it is determined, therefore, that the subject matter of a controversy is subject to arbitration under the LPP's, we believe that the Board has the discretion to refer to the arbitrator questions concerning the procedural propriety of the claims for arbitration of that controversy.

■ In this case, it is clear that the dispute over the integration of the seniority lists was arbitrable. CAB Orders 72–5–73/74 (April 24, 1972); *see American Airlines, Inc. v. CAB*, 445 F.2d at 895. Delta's refusal to participate in arbitration was based on the procedural contention that no proper request for arbitration of the dispute had been filed with it within the time limits established by section 13 of the LPP's. Under these circumstances, it can reasonably be said that the Board, after finding the substance of the dispute arbitrable, acted within the scope of its discretion in delegating the procedural question to the arbitrator.

■ The next step in our review is to determine whether the Board, although acting within the scope of its discretion, abused that discretion in this case by referring Delta's timeliness contention to arbitration. To make this determination, we must carefully examine the administrative record, *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), to ascertain, first, whether the Board considered the relevant factors, and second, whether it made "a clear error of judgment." *Citizens*

to Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 416, 91 S.Ct. 814.

From an inspection of the Board's order and the material before it when its decision was made, it is plain that the Board considered those factors relevant to its choice to refer the procedural issue to the arbitrator. It took specific note of the policy underlying the arbitration clause in the LPP's—to promote the expeditious settlement of labor disputes arising after mergers—and stated that its normal inclination would be to resolve the timeliness issue itself, rather than referring it to arbitration.[21] However, after inspecting the record, the Board believed that, although there were certain undisputed facts which might appear dispositive of the procedural argument, there were also factual inadequacies on various issues which the Board perceived as possibly pertinent to the final outcome of the dispute.[22] Moreover, the resolution of those labor issues would involve not only further factual investigation, but also the application of labor law principles in which the Board had no special knowledge or expertise.[23] Our study of the Board's order in this case thus reveals that the Board carefully considered those factors relevant to its final decision, balancing the general desire for speedy settlement under the LPP's against the need in this particular case for further factual and legal determinations by an experienced labor arbitrator.

The question remains, however, whether the Board made a clear error of judgment in declining to decide the timeliness issue on the record before it. In this regard, Delta asserts that all the facts necessary to a decision on the timeliness issue were undisputed and therefore that the Board's reasons for delegating the procedural question were not supported by the record.[24] We do not agree.

The undisputed facts in the record before the Board do reveal that the Committee made no formal protest to Delta until many months after the Board's September 1973 decision on TWU's representational capacity.[25] However, depending upon the arbitrator's resolution of the issues posed by the Board, such a lapse of time could become irrelevant to the final outcome of the timeliness dispute. For instance, the arbitrator might find that Delta contributed to delay in arbitration requests or had actual knowledge of stewardess dissatisfaction, and that such delay or knowledge caused Delta's duty to arbitrate to arise within the LPP's time limit. Moreover, if the arbitrator found that TWU or some other group or individual actually represented the former Northeast stewardesses and made a timely demand for arbitration, such factual and legal findings could eliminate any procedural deficiencies in the Committee's subsequent requests.[26] Because of its uncertain-

---

**21.** CAB Order 76–9–129 at 4, 6 (Sept. 23, 1976), J.A. at 20, 22.

**22.** Id. at 5, J.A. at 21.

**23.** Id.

**24.** Brief of Petitioner at 16–17, 29. Delta also contends that the Board's treatment of the record was inconsistent with its announced preference for resolving procedural issues itself in order to expedite the settlement of disputes under LPP's. Id. at 29–33; see CAB Order 76–9–129 at 4, 6 (Sept. 23, 1976), J.A. at 20, 22. We do not believe, however, that the Board, by stating its "normal inclination" to decide such issues, was thereby setting a standard for itself from which it could not deviate without being found to have engaged in arbitrary and capricious action. Cf. City of Lawrence v. CAB, 343 F.2d 583, 588 (1st Cir. 1965) (in which the court cited and relied on cases in which the agency was held to have established such a standard).

Rather, we believe that the Board was recognizing that it had the discretion either to resolve or to delegate the timeliness question, depending upon the adequacy of the record before it and the perceived need for specialized knowledge in labor matters to deal with the question. Furthermore, throughout the prolonged proceedings leading to this appeal, the Board had consistently stated that Delta's particular timeliness argument should be resolved in negotiation and arbitration.

**25.** See notes 12 & 13 supra.

**26.** In this regard, although Delta has asserted throughout these proceedings that no proper request for arbitration was filed with it until 1974, see J.A. at 187, the Committee alleges that its request is merely a continuation of those lodged in the fall of 1972 by TWU, see id. at 183, 187.

ty as to the facts relating to these issues and their legal effect on Delta's timeliness contention, the Board decided to refer the whole matter to the arbitrator, rather than to make a decision based on a record which it believed to be inadequate and grounded on labor principles with which it was unfamiliar.

The outcome of this case might have been different if there had been no factual basis in the record for the issues raised by the Board or if the legal aspects of those issues had previously been settled. However, all the issues which the Board believed might ultimately be pertinent to the proper resolution of Delta's timeliness contention did have a factual basis in the record already before the Board and were unresolved at the time of its order. For instance, the question of whether TWU or other groups or individuals actually had the authority to represent former Northeast stewardesses was not answered clearly by the documents or assertions in the record and had not been resolved completely by the Board's earlier order.[27] Furthermore, the record indicates that Delta could have had actual knowledge of employee dissatisfaction in the fall of 1972 and that its continuing insistence on formal representational authorization could have contributed to the delay in arbitration requests.[28]

The administrative record in this case thus supports the factual existence of those issues which the Board believed might be important to the final disposition of the timeliness issue. Finding that further investigation and experience application of labor law principles were necessary to the proper resolution of these issues, both as to their factual basis and their legal effect, the Board referred the entire procedural problem to the arbitrator. On the basis of the record before us, we do not believe that such delegation constitutes a clear error of judgment.

### III

Many of the problems posed by the present case are of the Board's own making. A concise statement of the approved manner of filing requests for arbitration and of establishing representational capacity would eliminate confusion and delay in the settling of disputes under the LPP's. Nevertheless, we find that the Board had the discretion to delegate to arbitration the resolution of the timeliness issue raised by Delta. We further hold, after reviewing the administrative record, that the Board did not abuse its discretion in doing so. The order of the Board is therefore

*Affirmed.*

---

27. *See id.* at 146–48, 169; CAB Order 73–9–42 (Sept. 11, 1973), J.A. at 5. In its order dismissing TWU's petition, the Board confined its discussion of TWU's authority to represent the former Northeast stewardesses to the issue of whether TWU's representational status transcended the merger.

28. For instance, Delta was informed of TWU's intention to pursue arbitration on behalf of the former Northeast stewardesses in September 1972, J.A. at 83, and of TWU's requests to the National Mediation Board in October 1972, *id.* at 100. Actual knowledge of specific employee discontent can also be attributed to Delta at the time TWU filed its supplemental petition to the Board, with letters from five stewardesses to TWU voicing their dissatisfaction with the integrated seniority list. *See id.* at 141, 146–54. Furthermore, whether or not such action was legally justified, it cannot be denied that Delta's demands for formal representational authorization delayed both TWU's and the Committee's pursuit of the arbitration remedy. *See id.* at 107–08, 183, 187.