**RETAIL DELIVERY DRIVERS, DRIVER SALESMEN, PRODUCE WORKERS & HELPERS LOCAL 588, Petitioner-Appellant,**

v.

**SERVOMATION CORPORATION, Respondent-Appellee.**

No. 82–4396.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1983.

Decided Sept. 30, 1983.

Kenneth N. Silbert, Beeson, Tayer, Kovach & Silbert, San Francisco, Cal., for petitioner-appellant.

Samuel L. Holmes, Angell, Holmes & Lea, San Francisco, Cal., for respondent-appellee.

Before FAIRCHILD *, Senior Circuit Judge, and HUG and FARRIS, Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

This is an appeal from a denial of Local 588's Petition to Compel Arbitration pursuant to its collective bargaining agreement with Servomation. The district court held that petitioner's grievance was "not subject to compulsory arbitration because of [its] failure to comply with the contractual time limitation [for demanding arbitration] and that the parties did not agree to the arbitration of grievances not meeting the contractual time limitation." We reverse.

## I.

The collective bargaining agreement between Local 588 and respondent Servomation ("the Agreement") governs the wages and working conditions of certain Servomation employees from July 1, 1980 to June 30, 1983. Sections 15 and 16 of the Agreement provide a grievance procedure for resolving disputes arising under the contract. Under Section 16 of the Agreement, a grievance is heard initially by an "Adjustment Committee" composed of two members selected by the union and two members selected by the company. Where a grievance is not resolved by the Adjustment Committee the matter may be taken to arbitration provided proper notice is given to the other party.

Section 16 requires that a party give notice of its desire to arbitrate within seventy-two (72) hours of notification of the Committee's inability to decide the matter. If neither party seeks arbitration within that time period, the matter is "deemed to have been settled in favor of the [defending] party." [1]

On September 14, 1981 Local 588 filed a grievance challenging the termination of Orlandus Bransford, an employee covered by the Agreement. The grievance was heard by an Adjustment Committee on September 29. The Committee failed to reach a consensus. The Committee recorded its deadlock on that day; there is no indication that formal notification of the Committee's inability to decide the matter was ever provided to the parties.

Local 588 demanded that the Bransford grievance be submitted to arbitration on October 7, 1981. The parties agree that this demand came more than 72 hours after the September 29 meeting. Servomation refused to submit to arbitration on the grounds that the demand was untimely. Local 588 made other demands for arbitration of the grievance on October 23 and November 19, 1981, including arbitration of any issue as to timeliness. These demands were also refused by Servomation. Local 588 brought a Petition to Compel Arbitration in the District Court for the Northern District of California on December 28.

## II.

The petition alleged that Local 588's delay in demanding arbitration was caused by the Adjustment Committee's direction to the parties to make further efforts to re-

---

* Of the Seventh Circuit sitting by designation.

1. Section 16 of the Agreement provides in relevant part:

   If the Committee fails to settle or decide the dispute, the matter may be referred to an impartial arbitrator by either the Employer or the Union and the decision of the impartial arbitrator shall be binding on all the parties. Notice by either party to the other of his desire to place the matter before an impartial arbitrator shall be submitted to the other party in writing within seventy-two (72) hours of notification by the Committee of its inability to decide the matter. *In the event neither party notifies the other of the desire for arbitration within the seventy-two (72) hours specified herein, then, and in that case, the matter will have been deemed to have been settled in favor of the party against whom the grievance, dispute or controversy has been brought.*
   (Emphasis added.)

solve the grievance; as soon as it became apparent settlement was impossible a demand for arbitration was made. Local 588's memorandum in support of its petition argued that the district court only had jurisdiction to compel arbitration, and that any underlying issues, including timeliness of its notice of a desire to arbitrate, are reserved to the arbitrator. Respondent answered by denying that any further settlement discussions were carried on by direction of the Committee or in contemplation of suspending Local 588's duty to demand arbitration, and by arguing that the district court could properly deny the petition to compel arbitration because the parties had not contracted to arbitrate untimely claims.

In a brief hearing before the district court the petitioner conceded that it had presented no evidence supporting its allegations of an excuse for giving untimely notice because in its view "that is a dispute which arises under the contract and which has to be arbitrated." The petitioner did offer to make such evidence available to the court. After concluding that it had jurisdiction to decide the timeliness issue and finding no evidence excusing petitioner's untimely demand for arbitration, the district court entered judgment for the respondent.

Petitioner subsequently filed a Motion to Alter Judgment and for Relief from Judgment asking the court to reconsider its conclusion that it had jurisdiction to rule on the timeliness question. In addition, petitioner asked the court to consider the affidavit of the Secretary-Treasurer of Local 588 to support its allegations that any delay in demanding arbitration was excusable. The district court denied both motions on the grounds that they presented legal and factual material which had been available at the time of the original petition to compel arbitration. Local 588 appeals.

### III.

Servomation concedes that the substance of the underlying dispute over Bransford's discharge was subject to arbitration under the Agreement. In *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court held that "[o]nce it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557, 84 S.Ct. at 918. *John Wiley* involved a petition to compel arbitration where preliminary steps in the grievance procedure set out by contract had not been satisfied, including time limitations imposed on the filing of notice of a grievance. The Supreme Court took a similar position in *Operating Engineers v. Flair Buildings,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), where the equitable defense of laches was raised to a petition to compel arbitration pursuant to a contract. The Court held that the laches defense was among the issues to be arbitrated under the collective bargaining agreement, and properly a subject to be addressed by the arbitrator. *See also Halcon International, Inc. v. Monsanto Australia Ltd.,* 446 F.2d 156 (7th Cir.), *cert. denied,* 404 U.S. 949, 92 S.Ct. 286, 30 L.Ed.2d 266 (1971). These decisions and later cases suggest a number of reasons for passing an entire dispute to the arbitrator, principal among them being the desirability of deferring to someone familiar with the practices in the industry and the avoidance of duplication and delay. *See Delta Air Lines v. C.A.B.,* 574 F.2d 546, 550 (D.C.Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978).

Respondent attempts to distinguish these decisions, and the other lower court cases cited by petitioner, by pointing out their failure to address the restrictions of the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976). That Act only permits a court to compel arbitration "in the manner provided in [the written] agreement." 9 U.S.C. § 4 (1976). Section 4 states the basic proposition that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Re-

spondent urges that in this case the parties did not contract to proceed to arbitration unless the Agreement's contractual time limitations were satisfied. The *John Wiley* and *Operating Engineers* decisions suggest, however, that when time limitations and other procedural requirements are made an express part of the arbitration agreement, they become part of the bundle of issues the parties consented to have decided by an arbitrator's special interpretative ability. *Cf. Operating Engineers,* 406 U.S. at 490–91, 92 S.Ct. at 1712 (suggesting that if the laches defense is "intrinsic" to—*i.e.,* a part of—the contract, its disposition should be referred to the arbitrator). This suggestion finds support in Arbitration Act policy which counsels that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* —— U.S. ——, ——, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

There is some support for the proposition that a court may consider a strictly procedural question as to the timeliness of a demand for arbitration in those rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration. *Cf. John Wiley,* 376 U.S. at 558, 84 S.Ct. at 918; *Rochester Telephone Corp. v. Communications Wkrs. of Am.,* 340 F.2d 237, 239 (2d Cir.1965). But we are not confronted with such an instance here. Local 588's petition claimed a reason for finding it had complied with the timeliness requirements of the Agreement. The petition alleged that Servomation waived any right to assert a time-bar to its arbitration demand by engaging in further discussions; petitioner offered to present evidence in support of its allegation at the original hearing and ultimately presented evidence with its Motion to Alter Judgment.[2] Additionally it may be asserted,

though not pressed by these litigants, that the 72 hour time limit does not begin to run until a party receives formal notice of the Committee's deadlock. An arbitrator would be able to address these factual issues—which involve examining the usual practices of the parties—more readily than the courts. *See Rochester Telephone Corp.,* 340 F.2d at 239 (requiring arbitration of a "[procedural] issue on which the history of the parties' arbitral dealings might throw significant light").

Accordingly, we reverse and remand for entry of an order compelling arbitration of the Bransford discharge including any issue as to the timeliness of the notice.

---

2. At the time of the district court's original denial of Local 588's petition, the court had only petitioner's allegation that its demand was timely. We do not, however, fault the petitioner for failing to make an evidentiary showing in the first instance where, as here, the court's jurisdiction to consider timeliness of the demand was in question. Under these circum-

stances the petitioner should have been allowed an opportunity to offer additional evidence on the issue. The affidavit ultimately presented by Local 588 in its Motion to Alter Judgment puts the issue of timeliness sufficiently in doubt to require the district court to defer to the arbitrator.