MILLWRIGHTS LOCAL 548, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, AFL–CIO, Appellant,

v.

ROBERT J. PUGLEASA COMPANY, INC., Respondent.

No. C6–87–1984.

Court of Appeals of Minnesota.

Feb. 9, 1988.

Roger A. Jensen, Carol A. Baldwin, Peterson, Bell, Converse & Jensen, St. Paul, for appellant.

Daniel R. Butler, Butler & Pecchia, St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and PARKER and LOMMEN,* JJ.

## OPINION

PARKER, Judge.

Millwrights Local 548, United Brotherhood of Carpenters and Joiners, AFL–CIO (union), brought this action pursuant to Minn.Stat. § 572.09(a) (1986), which requires a court to order arbitration upon a showing of the existence of a written

* Acting as judge of the Court of Appeals by ap-

agreement to arbitrate. Robert Pugleasa, the employer, asserted that the dispute had been extinguished by the terms of the agreement. The trial court determined there was no right to arbitration under the terms of the agreement. The union appeals from the denial of their application to compel arbitration. We reverse.

## FACTS

On April 21, 1986, Robert Pugleasa Company terminated an employee, James Leach. Leach filed a grievance with the union and also filed unfair labor practice charges with the regional office of the National Labor Relations Board (NLRB).

A June 2, 1986, letter from Jack Bibeau, the union's business agent, to the NLRB stated:

> *Personal Comments:* It is the responsibility of the Business Representative to put the member to work but only the member can keep his own job. The Business Representative cannot do it for him. In this case the company felt Jim Leach was no longer performing his job in a satisfactory manner. I felt that it was Jim Leach who lost his own job. The company and the union are not to blame.

Shortly after receiving this letter, the NLRB dismissed Leach's complaint.

In compliance with the terms of the Collective Bargaining Agreement, Article X (Settling Disputes), the parties met on June 30, 1986, to hear the contested grievance. On July 1, 1986, the committee gave written notice to the parties that it was deadlocked:

> Upon hearing the facts presented the Committee was unable to reach a decision on the matter because of a deadlock. Therefore in accordance with the agreement, the subject matter should be referred to the Board of Arbitration by the interested parties.

The section of the agreement that controls in the event of a deadlock states:

> Should the joint committee as established be unable to reach a decision on

pointment pursuant to Minn. Const. art. 6, § 2.

the matter before it, within ten (10) working days, or because of a deadlock (lack of majority) then the matter shall be referred to a Board of Arbitration that shall operate in the following manner:

All differences or disputes concerning the interpretation or application of any provisions of this Agreement shall be submitted to the grievance procedure. Any party to this agreement (IMCA, Union or Employer) shall have the right to raise grievances.

Each grievance shall be deemed to be waived unless submitted in writing to the parties for negotiations within ten (10) working days, with a copy to the IMCA. If the dispute is not settled within ten (10) working days, it shall be referred in writing to a Board of Arbitration which shall operate in the following manner * * *.

No further action was taken by the union; therefore, Pugleasa hired and trained a replacement worker with the union's acquiescence. The union was silent for over eight months; there is no evidence of any further written notice or contractual submission.

On April 21, 1987, Pugleasa was served with the union's application to compel arbitration. Pugleasa answered, claiming that because the Union had not submitted the matter in writing to the Board of Arbitration, the issue was "deemed waived" pursuant to the the agreement. The union moved to compel arbitration.

The trial court heard the matter and issued an order denying the union's motion to compel arbitration, because it decided that the language of the agreement was clear and that arbitration had been waived. The union appeals from this order.

### ISSUE

Did the trial court err in determining that waiver had occurred?

### DISCUSSION

On review, this court is not bound by the trial court's interpretation of the agreement; it is required to determine whether the trial court properly interpreted the language used by the parties to the agreement. *State v. Berthiaume*, 259 N.W.2d 904, 910 n. 8 (Minn.1977) (interpreting collective bargaining agreement). On appeal, the reviewing court independently determines whether the proper interpretation was given to the language used by the parties. *Employers Liability Assurance Corp. v. Morse*, 261 Minn. 259, 264, 111 N.W.2d 620, 624 (1961).

The disputed language of the agreement explains the procedure to be used in the event of a deadlock:

Each grievance shall be deemed to be waived unless submitted in writing to the parties for negotiations within ten (10) working days with a copy to the IMCA. If the dispute is not settled within ten (10) working days, it shall be referred in writing to a Board of Arbitration * * *.

The trial court found this language to be clear; we disagree. It is unclear whether a grievance must be resubmitted after deadlock or whether the ten-day deadline refers to submitting the initial formal grievance. It is clear, however, that eight months have passed since the deadlock occurred, and no action was brought by the union. The issue now is whether this constitutes waiver and in what forum that issue should be decided.

The arbitrability of a grievance can be classified as either substantive or procedural. Substantive issues examine whether the subject matter is arbitrable. Leach's dismissal was substantively arbitrable. However, procedural arbitrability issues examine whether preliminary steps of the grievance procedure have been exhausted or excused. Whether the right to arbitration has been waived can be classified as a procedural issue; however, "substantive" and "procedural" aspects of labor disputes do not arise in a vacuum. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 556, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964).

The *Wiley* case offers a careful analysis of how interwoven these two concepts can be. In *Wiley* the union attempted to com-

pel arbitration under a collective bargaining agreement. *Id.* at 544, 84 S.Ct. at 911. One issue addressed was

> whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites which, under the bargaining agreement, condition the duty to arbitrate have been met.

*Id.*

Recognizing that the procedural issue and the merits of a grievance can be inextricably intertwined, the Court stated:

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

*Id.* at 557, 84 S.Ct. at 918. The Court explained that deciding issues in two different forums went against both logic and public policy. *Id.* The Court further stated:

> Once it is determined * * * that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*Id.*

The Court offered the following standard for requiring denial of arbitration in the case of "strictly procedural" claims:

> [A] court could deny arbitration only if it could confidently be said not only that a claim was strictly "procedural," * * * but also that it should operate to bar arbitration all together, and not merely limit or qualify an arbitral award.

*Id.* at 557–58, 84 S.Ct. at 918.

Although the *Wiley* case cautions that "such cases are * * * rare indeed," *id.* at 558, 84 S.Ct. at 919, Pugleasa argues that the present case is strictly procedural and fits that exception. The union argues that this case involves both substantive and procedural issues which are intertwined with the merits of the underlying grievance.

In support of their arguments, both parties cite *Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Local 588 v. Servomation Corporation,* 717 F.2d 475 (9th Cir.1983). This case had similar facts and procedural contract language. There, as here, both parties agreed that the substance of the underlying dispute was subject to arbitration. *Id.* at 477. Their contract required that a party demand arbitration within 72 hours after a joint labor-management adjustment committee failed to resolve a grievance. *Id.* at 476. No formal notification of a deadlock was submitted to the parties. After the union failed to meet the 72–hour deadline and no action was taken for eight days, the employer refused to proceed to arbitration; the union moved to compel arbitration. Alleging that the delay was caused by the adjustment committee's direction to the parties to make further efforts to resolve the grievance, the union contended that when it was apparent that settlement was impossible, a demand for arbitration was made. *Id.* at 476–77.

Reversing the district court's order denying arbitration, the Ninth Circuit Court of Appeals said:

> The *John Wiley* * * * [decision suggests] that when time limitations and other procedural requirements are made an express part of the arbitration agreement, they become a part of the bundle of issues the parties consented to have decided by an arbitrator's special interpretive ability.

*Id.* at 478.

However, this case makes a distinction for "strictly procedural" issues, as did *Wiley.*

> There is some support for the proposition that a Court may consider a strictly procedural question as to the timeliness of a demand for arbitration in those rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration.

*Id.*

Pugleasa contends that because the union does not blame the employer for its long delay and offers no excuse for being

late, this arbitration issue is one of those rare instances where a procedural issue can be decided by the court. He also argues that no factual dispute exists, because the union's letter admits that "it was Jim Leach who lost his own job. The company and the union are not to blame." Because Pugleasa relied on that statement and hired a replacement worker, he contends that the procedural defense of laches applies. We find this to be a powerful argument made to the wrong forum.

 The equitable defense of laches is properly a subject to be referred to the arbitrator for decision. *Retail Delivery*, 717 F.2d at 477, offers as a rationale for passing such disputes to the arbitrator

the desirability of deferring to someone familiar with the practices in the industry and the avoidance of duplication and delay.

(Citations omitted).

The arbitrator has the power to consider past practices between the parties as they bear on the issue of timeliness and whether contract provisions have always been strictly enforced. The union alleges that such questions exist, and we hold that they are more suitably addressed to an arbitrator, who would have the power to take testimony and resolve them.

The Minnesota Supreme Court has set forth an even narrower exception to the rule that laches and waiver are issues for an arbitrator, in *Brothers Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422 (Minn.1980). The court there described a "limited exception" when courts may

rule on a laches defense to a request for arbitration in cases where the defense is not based on the underlying dispute but instead is derived from activity before the very court being urged to compel arbitration * * *.

*Id.* at 427–28.

In *Jurewicz* arbitration was demanded for the first time, after litigation had proceeded for nearly one year. The court emphasized that this rule applied only when a case "falls within the narrow factual confines of this exception." *Id.* at 428.

None of these facts apply to the present case. The union's excuses for untimeliness, and past practice on strict compliance, are issues which bear on the waiver, need to be examined and are more properly addressed to the arbitrator as a threshold issue.

### DECISION

The trial court erred in deciding a question which should have been addressed by an arbitrator.

Reversed.