NORTHWESTERN STATE BANK, OSSEO, MINNESOTA, v. DUANE W. FOSS AND OTHERS. ELMER M. LAMPHERE AND ANOTHER, APPELLANTS.

197 N. W. 2d 662.

May 5, 1972—No. 42965.

*Fredrikson, Byron & Colborn* and *Jerome S. Rice,* for appellants.

*Faegre & Benson, Rodger L. Nordbye, Gordon G. Busdicker,* and *Peter R. Kitchak,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

In Northwestern State Bank v. Foss, 287 Minn. 508, 177 N. W. 2d 292 (1970), defendants Elmer M. Lamphere and Raymond H. Wood attempted to appeal from an order granting a new trial on the issue of damages only in their claim against plaintiff, Northwestern State Bank, for breach of an agreement to extend the due date of a mortgage note. That appeal was dismissed, and they now appeal from the judgment entered following trial on the issue of damages. In addition to their claim that the court erred in reducing the damages awarded by a jury in the first trial and in granting a new trial on their rejection of a remittitur, defendants also claim that the trial court, upon retrial of the issue of damages, erred in denying their belated attempt to elect to rescind the extension agreement, and thereby escape liability for a deficiency judgment, and in limiting the period

of time for which they sought loss-of-bargain damages. We affirm.

Although the complex procedural history is set out in the prior appeal, where we dismissed defendants' appeal on the ground that there is no appeal of right from an order granting a new trial on the issue of damages alone, it appears necessary to again summarize the procedural history as well as the material facts in order to make understandable our disposition of this appeal on the merits.

On May 12, 1966, plaintiff bank instituted a deficiency action against the defendants and Duane and Doris Foss (who do not appeal) for the recovery of $23,000, the balance of the principal of a mortgage note following foreclosure of the mortgage. The Fosses had acquired title to 35 acres of gravel-bearing land located near Osseo, Minnesota, the purchase being financed by a $45,000 note secured by a mortgage to the bank. The due date of the note was November 4, 1965, with interest to be paid monthly. The mortgage contained a clause forbidding the removal of gravel from the land as long as the mortgage principal remained unsatisfied.

Defendants acquired separate one-third interests in the property from the Fosses on or about May 24, 1965, at which time they signed the following agreement stamped on the reverse side of the Fosses' note to the bank:

"For value received, I hereby guarantee the payment of the within note at maturity or at anytime thereafter, and hereby agree and consent to all the stipulations contained therein."

In consideration of defendants' guaranty, the bank orally agreed to permit removal of gravel by defendants if the proceeds therefrom were paid on the note and also to extend the due date of the note from November 4, 1965, to November 4, 1966. However, the bank reduced only the agreement to remove gravel to writing. The agreement to extend the note remained oral because of criticism by state bank examiners that the bank had overex-

tended credit and was maintaining too many substandard loans. Despite repeated assurances by George J. Dochniak, a bank officer and its representative in dealing with defendants, that the extension agreement would be honored, in November 1965 the bank, by letter, declared the mortgage note due in its entire amount of $45,000. Defendants immediately contacted Mr. Dochniak, pointing out that he had agreed to extend the note. Relying on Mr. Dochniak's promises, defendants, with the Fosses, continued to pay the interest on the note, and Mr. Dochniak continued his assurances that the agreement to extend would be fulfilled even though the bank in January again called the principal of the note due. The interest was paid to February 1966.

Foreclosure proceedings were commenced in March. On May 9, 1966, the property was sold at foreclosure sale to the bank, the only bidder, for $22,000 (even though the bank had appraised the land at $65,000). The bank then commenced this deficiency action. Defendants' answer denied liability, alleged, in effect, that their guaranty was in exchange for the bank's promise to extend the note one year and that this promise was not fulfilled, and prayed "that plaintiff take nothing in its pretended cause of action against them, and that the said cause of action be dismissed with prejudice." Defendants also cross-claimed against the Fosses for indemnity. After the bank's motion for summary judgment was denied, defendants counterclaimed against the bank, alleging damages of $61,000 resulting from the bank's "breach of its promise of forebearance."

At trial, the jury found in response to a special verdict that, despite the bank's denial, an agreement to extend the note had in fact been made and that defendants, with the Fosses, suffered $20,000 in damages as a result of the bank's admitted breach. Following trial, the bank made an untimely motion for judgment notwithstanding the verdict. After denial of this motion, defendants moved for specific findings of fact and conclusions of law to the effect that the breach of the agreement to extend excused their liability for the deficiency as well as entitled them to

$20,000 in damages. This motion also was denied. Instead, the trial court found the balance due on the note, including interest, to be $25,117.90 and, less the $20,000 awarded defendants, ordered defendants, including the Fosses, to pay $5,117.90 as the deficiency owing on the mortgage note.

Subsequently, on August 9, 1968, and before judgment was entered, the bank again moved for judgment notwithstanding the verdict, and also for an order reducing the amount of the damages or for a new trial on the issue of damages alone. The trial court denied the requested judgment notwithstanding the verdict on the merits but reduced the damages to $10,000 and ordered a new trial on damages only, unless the remittitur was consented to by the defendants within 15 days. Defendants refused to consent and, on October 31, 1968, requested the clerk of court to enter judgment on the judge's order pursuant to the original jury verdict. This judgment was entered and appealed from by defendants Lamphere and Wood.

In Northwestern State Bank v. Foss, *supra*, we ruled that the order for a new trial on damages nullified the earlier order for judgment and that the subsequent entry of judgment was unauthorized. Since defendants Lamphere and Wood were then appealing from the order granting a new trial on the question of damages alone, which is not appealable as a matter of right, and because the case did not warrant discretionary review, we remanded for trial on the issue of damages alone. We also expressed our view in remanding that the trial court did not abuse its discretion in ordering a new trial on damages.

Prior to retrial, the parties stipulated that the only issue to be relitigated was the amount of damages sustained by defendants. Presumably provoked by our observation in the former appeal that "the case may involve a problem of election of remedies," 287 Minn. 512, 177 N. W. 2d 295, at commencement of the second trial, defendants stated that although they believed it unnecessary to do so, if they were required to make an election of remedies they wished to elect rescission based on the bank's

breach of the extension agreement, which, they asserted, resulted in a total failure of consideration. Upon inquiry by the court, defendants' counsel admitted they did not plead failure of consideration nor had they attempted to amend their pleadings to that effect. The court therefore denied the motion to elect rescission as untimely and, consistent with the order granting a new trial, restricted the second trial to the issue of damages. At retrial, the court, based upon defendants' proof, limited recovery to the loss of the reasonable rental value of the gravel pit caused by the bank's breach of the agreement and, additionally, limited the period of loss from March, after foreclosure proceedings were commenced, until November 1966, the end of the extension period. This limitation was uncontested. The jury awarded defendants and the Fosses $4,246.21 in damages, which was offset against the deficiency with interest owing the bank, making the deficiency recovery $25,385.04.

After the foreclosure sale in 1966 and during the period of redemption, the wife of defendant Lamphere purchased the Foss one-third interest in the land. On May 8, 1967, the last day of the year of redemption, the wives of both Lamphere and Wood redeemed the property for the $22,000 foreclosure price. The land was never operated as a gravel pit from the date of its sale to the Fosses in November 1964 until it was sold by the appellants for $74,500 in February 1970.

There are three issues of merit raised on appeal: (1) Whether the trial court, following the initial trial, abused its discretion in ordering a conditional new trial of the issue of damages alone; (2) whether the court erred in denying defendants' attempt to rescind the extension agreement at the commencement of the second trial; and (3) whether on the evidence the trial court improperly limited the period for which damages for loss of rental income could be awarded.

As to the order granting a conditional new trial on damages alone, the trial court was in the best position to pass on the excessiveness of the $20,000 award. Colgan v. Raymond, 275 Minn.

219, 146 N. W. 2d 530 (1966). On appeal from the first trial, we commented that under the circumstances the trial court did not abuse its discretion in granting a conditional new trial, and the proof of damages offered at the second trial demonstrably indicates that the trial court did not abuse its discretion in ordering the remittitur or the new trial upon nonconsent. Clearly, the evidence submitted at the first trial fell far short of supporting an award of $20,000. Rules of Civil Procedure, Rule 59.01(5); Hetland & Adamson, Minnesota Practice, Civil Rules Ann. p. 614.

The trial court justifiably refused defendants' election of rescission at the second trial. Breach-of-contract damages and rescission are historically viewed as inconsistent remedies because the former assumes and affirms a contract while the latter denies or unmakes the contract. Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. 2d 641 (1954); Hunter v. Holmes, 60 Minn. 496, 62 N. W. 1131 (1895); 12 Williston, Contracts (3 ed.) § 1469, p. 197. Under First Nat. Bank v. Flynn, 190 Minn. 102, 250 N. W. 806 (1933), it is true that if inconsistent remedies are sought and it is doubtful which one will bring relief, a party may claim either or both alternatively until one affords a remedy and the claimant is not bound by his election until one remedy is pursued to a determinative conclusion. The purpose of the election-of-remedies doctrine is not to prevent recourse to a potential remedy but to prevent double redress for a single wrong. Cashen v. Owens, 225 Minn. 25, 29 N. W. 2d 440 (1947). It is for this reason that once an available remedy is taken to its conclusion, the party cannot thereafter assert a new theory to enhance recovery. Apart from the failure of defendants to plead rescission, expressly or implicitly, in their answer and counterclaim, we are compelled to hold that defendants carried the remedy of loss-of-bargain damages to a determinative conclusion and therefore were justifiably denied election of rescission at the commencement of the second trial. In pleading and trying the case on the theory of breach-of-contract damages, in their subsequent efforts including the prior appeal to uphold the jury award, and

in their stipulating on retrial that the issue was the amount of damages, the defendants unmistakably manifested a choice of remedy that was available to them in lieu of rescission, and such election became the law of the case. Carrying this case to judgment on the merits under the theory of loss-of-bargain damages while rescission was an available alternative remedy can hardly be regarded otherwise than as a conclusive election. Eder v. Fink, 147 Minn. 438, 180 N. W. 542 (1920). See, 5A Corbin, Contracts, § 1220, note 35; Restatement, Contracts, §§ 381 and 384; Clark, Contracts (4 ed.) § 271; 12 Williston, Contracts, § 1469, p. 210. And, contrary to defendants' contention, the fact that the amount of damages was to be relitigated does not alter the fact that defendants carried their right to loss-of-bargain damages to a determinative conclusion on the merits.[2]

Finally, the court's instructions limiting defendants to loss-of-rental damages from the date of commencement of foreclosure in March 1966 (rather than from November 1965 when the bank called the note due) until the end of the extension period in November 1966 is supported by the record. Quite understandably, because of the seasonal nature of mining gravel, defendants failed to prove any loss-of-rental damages for the winter months.

---

[2] Defendants also argued, as we understand, that they should have been permitted rescission not only because the bank admittedly breached the agreement but because such breach constituted a total failure of consideration. This does not aid defendants because rescission on any theory would be barred by defendants' election. Also, failure of consideration is an affirmative defense which must be specifically pleaded. Rule 8.03, Rules of Civil Procedure. Defendants, under the most liberal reading of their answer and subsequent pleadings, did not specifically plead failure of consideration. This reading of their answer is supported by the uncontested jury instructions in the first case. The issue of failure of consideration not having been pleaded, argued, instructed, or decided below, it would be improper for us now to consider rescission because of failure of consideration for the first time on appeal. See, French v. Lindh-Gustafson-Klopfer Co. Inc. 216 Minn. 521, 13 N. W. 2d 479 (1944); Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156 (1913).

The evidence thus required the court to limit the period for which damages could be awarded.

Affirmed.

MR. JUSTICE TODD and MR. JUSTICE MACLAUGHLIN, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.