## IN RE ARBITRATION BETWEEN VIOLA A. WACKER AND OTHERS v. ALLSTATE INSURANCE COMPANY.

251 N. W. 2d 346.

February 25, 1977—No. 46607.

*James M. Shultz,* for appellant.

*DeParcq, Anderson, Perl & Hunegs, Norman Perl,* and *Stephen S. Eckman,* for respondents.

Heard before Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

This case involves the arbitration of an uninsured-motorist clause in an insurance policy. After beneficiary of the policy entered into a settlement agreement with the insurance company, she challenged the validity of the settlement and prevailed in arbitration proceedings. The insurance company appeals from a judgment confirming the award of arbitration. We affirm.

The following issues are presented in this appeal:

(1) Whether appellant insurance company properly moved for a vacation of the confirmation of the award of arbitration within the 90-day statutory period allowed by the Uniform Arbitration Act.

(2) Whether the validity of a settlement agreement entered into between an insurance company and the beneficiary of an uninsured-motorist endorsement is an arbitrable issue.

Ervin Wacker died in an automobile accident on December 24, 1970, when the car which he was driving was hit head on by an intoxicated, uninsured motorist. At the time of the accident, 2:45 a. m., Wacker was on his way to work at the State Capitol as foreman of the grounds crew, having been called in for a special snow removal assignment. Wacker was driving east on Highway No. 5 and had just passed through the Fort Snelling Tunnel and onto the bridge over the Mississippi River when his car was hit. The uninsured motorist, who had allegedly been drinking at the Contact Bar, Inc., at Fort Snelling, had apparently entered the freeway on an exit ramp and had been driving west on the eastbound freeway.

Wacker was insured at the time of the accident by appellant, Allstate Insurance Company (insurance company). One policy (No. 0 11 736 107) was in effect which covered the two cars owned by Wacker. A separate premium was charged for uninsured-motorist coverage for each car. The uninsured-motorist coverage for each car was the statutory minimum, $10,000/$20,000.

Ervin Wacker's widow, Viola Wacker, retained counsel to probate the estate and also to pursue her rights under the insurance policy. On January 29, 1971, counsel contacted the insurance company, indicated he represented Mrs. Wacker, and started negotiations.

After several months of negotiation, the insurance company and counsel for Viola Wacker settled on the sum of $6,500. On the advice of counsel, on November 23, 1971, Mrs. Wacker signed a release form, providing in pertinent part:

"In consideration of the payment of Six Thousand Five Hundred And 00/100 Dollars by the ALLSTATE INSURANCE COMPANY, the receipt of which is hereby acknowledged, the ALLSTATE IN-

SURANCE COMPANY, is hereby released and discharged from any and all liability whatsoever under the Bodily Injury Benefit Coverage of Policy No. 11 736 107 issued to Ervin Wacker by the ALLSTATE INSURANCE COMPANY, for injuries sustained by Ervin Wacker due to an accident on or about the 24th day of December, 1970."

This release form was witnessed by one of Mrs. Wacker's children, Mrs. Layton Carlson, and is limited to Policy No. 11 736 107.

Mrs. Wacker also executed the following trust agreement:

"TRUST AGREEMENT

November 18, 1971

"Mrs. Viola Wacker hereinafter referred to as the Trustee, having sustained damages because of bodily injury, sickness, or disease or death from an event which occurred on December 24, 1970, as the result of which claim has been made to Allstate Insurance Company hereinafter referred to as the Beneficiary, under its policy 11 736 107 and in Consideration of the payment to be made pursuant to said Bodily Injury Benefit Coverage, it is hereby agreed that the Trustee will hold for the benefit of the Beneficiary all rights, claims, and causes of action which the Trustee has or may have against any person or persons, organization, association or corporation other than the Beneficiary because of bodily injury, sickness, or disease or death which is the subject of the claim made against the Beneficiary.

"The Trustee agrees to take, through any representative designated by the Beneficiary, such action as may be necessary or appropriate to recover the damages suffered by the Trustee from any person or persons, organization, association or corporation other than the Beneficiary who may be legally liable therefor, such action to be taken in the name of the Trustee, the Beneficiary to pay all costs and expense in connection therewith. It is further agreed that any monies recovered by the Trustee as the result of judgment, settlement, or otherwise will be held in trust

and paid to the Beneficiary, provided, however, any sum recovered in excess of the total amount paid by the Beneficiary to the Trustee under the terms of the above-mentioned policy, shall be retained by the Trustee for his own use and benefit."

The insurance company issued a check for $6,500 payable to Mrs. Wacker and her attorney, which they negotiated.

On November 24, 1971, counsel returned the release and trust agreement to the insurance company with a letter which stated:

"Please find enclosed herewith and returned to you the Receipt and Release Under Bodily Injury Benefit Insurance and Trust Agreement as same have been signed by Mrs. Viola Wacker. These documents are returned to you on the basis of the $6,500.00 settlement and on the basis that it release Allstate Insurance Company as to any further payment under Coverage 'S' as to uninsured motorists regarding bodily injury and as to the right to proceed against the owner of the uninsured vehicle."

The apparent reason for returning the documents was that counsel had turned over the handling of a dram shop claim to respondents' present counsel in this appeal.[1]

At this point renegotiations by respondents' present counsel with the insurance company for a higher settlement figure were commenced. On December 7, 1973, respondents' present counsel wrote to the insurance company and made demand for an additional $13,500 because the uninsured-motorist provision of the policy covered two vehicles owned by Mr. Wacker for which two premiums were paid. The insurance company refused the demand.

Finally, on January 29, 1975, respondents' present counsel made a demand for arbitration. The arbitration clause of the policy stated:

"The determination as to whether the insured shall be legally entitled to recover damages, and if so entitled the amount thereof, shall be made by agreement between the insured and Allstate.

---

[1] This claim was later settled for $77,500.

"In the event of disagreement and upon written demand of the insured, the matter or matters upon which the insured and Allstate do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. The insured and Allstate each agrees to consider itself bound and to be bound by any award made by the Arbitrator(s) pursuant to this Section II."

In the demand for arbitration, however, counsel also listed a *second* policy (No. 11 903 512 H 627), which turned out to be a homeowners policy.

The insurance company filed an answer, objecting to the arbitration of the claim. Paragraph II of the answer states:

"That the *policies of insurance referred to in the Demand for Arbitration* provide for Protection Against Bodily Injury by Uninsured Automobiles, under Section II of said policy, and further provides that, 'The determination as to whether the insured shall be legally entitled to recover damages, and if so entitled the amount thereof, shall be made by agreement between the insured and Allstate.' " (Italics supplied.)

Thus, at this time it appears that the parties were not aware that the second policy referred to was a homeowners policy.

The insurance company's motion for stay of the arbitration proceedings was denied on March 24, 1975, by the district court, and the parties were ordered to proceed with arbitration.

The arbitration proceedings were heard on June 13, 1975, by John H. Ramstead, arbitrator. Mrs. Wacker, represented by her present counsel, took the position that the release and trust agreement should be set aside for two reasons: First, that Mrs. Wacker made a unilateral mistake of fact because she was not aware that she might be able to get more money; second, that the release and settlement did not bind Mr. Wacker's children.

The insurance company contended that the settlement agree-

ment was binding and thus eliminated the possibility of a "disagreement," a condition precedent to arbitration. It also pointed out that the second insurance policy listed on the claim for arbitration was a homeowners policy.

The parties stipulated that Mr. Wacker was insured under Policy No. 0 11 736 107 with the insurance company at the time of his death; that the policy limits were $10,000 for one injury; that Mr. Wacker died as a result of an accident that was the fault of an uninsured driver; and that the one policy insured two vehicles.

At the close of the arbitration hearing, the arbitrator listed four issues to be decided: (1) Whether the settlement agreement was binding; (2) whether the settlement, if valid, bound the other heirs of Mr. Wacker; (3) whether the provisions of the policy that provide for payment to the surviving spouse mean that those payments are not to include amounts made for the benefit of the children of the decedent; (4) whether there was an additional $10,000 of uninsured motorist coverage available for damages resulting from the accident of December 24, 1970, under Policy No. 0 11 736 107.

On September 5, 1975, the following award was made:

"THE UNDERSIGNED ARBITRATOR, designated under the arbitration provision of Policy No. 011 736 197 & *11 903 512 H 627*, having been duly sworn and having heard the proofs and allegations of the parties, AWARDS as follows:

ALLSTATE INSURANCE COMPANY shall pay to VIOLA A. WACKER, for the benefit of VIOLA A. WACKER, KATHLEEN K. WACKER, VIRGENE CARLSON, KAREN TELTHOESTER AND LARRY WACKER the sum of THIRTEEN THOUSAND FIVE HUNDRED DOLLARS ($13,-500.00).

"This Award is in full settlement of all claims submitted to this arbitration." (Italics supplied.)

Note again that the homeowners policy is mentioned.

On motion, the district court entered an order confirming the

award. Judgment was entered and the insurance company appealed from that judgment.

The dispositive issue in this case is the failure of appellant to apply for vacation of the arbitrator's award within the 90-day statutory period.

Uninsured-motorist endorsements of an automobile liability policy are subject to arbitration when the endorsements include an agreement to arbitrate such controversies. See, Dunshee v. State Farm Mutual Auto. Ins. Co. 303 Minn. 473, 228 N. W. 2d 567 (1975). In the absence of a contrary agreement between the parties, written agreements to arbitrate are interpreted with reference to the Uniform Arbitration Act, Minn. St. c. 572. Component Systems v. Murray Enterprises of Minn. 300 Minn. 21, 23, 217 N. W. 2d 514, 515 (1974).

Section 572.18 sets forth the rule for confirmation of an award and states:

"Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 572.19 and 572.20."

Minn. St. 572.19, subd. 2, sets a 90-day limit from the delivery of the copy of the award to apply for vacation:

"Subd. 2. An application under this section shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known."

The award of arbitration was served on appellant on September 8, 1975. No action was taken by the insurance company during the next 90 days. On December 10, 1975, Mrs. Wacker, by her attorney, gave a notice of motion and motion to confirm the award. The motion was heard on December 17, 1975, and the award was confirmed.

The appellant makes no claim that the award was predicated upon corruption, fraud, or any other undue means which would possibly delay the running of the 90-day period. Therefore, there is little choice but to view the running of the statutory period as precluding a challenge to the award of arbitration on appeal. In Component Systems v. Murray Enterprises of Minn. 300 Minn. 21, 24, 217 N. W. 2d 514, 516 (1974), this court took notice of the clear mandate of the uniform act provisions on the challenging of the confirmation of an award:

"The act plainly requires that an application to vacate an award must be made within 90 days after delivery of the award to the applicant unless the award is predicated upon corruption, fraud, or other undue means, in which case the vacation application must be made within 90 days after such grounds are known or should have been known. In this case respondent made application to confirm the award over 8 months after the award was delivered, and no application to vacate had been made by appellant during that time. Therefore, the trial court was obliged to confirm the award."

Also, as pointed out in Component Systems, courts in several other states have held that a motion to vacate an award is absolutely barred when it is not brought within the 90-day statutory limitation period.[2]

Appellant acknowledges it has no basis on which to vacate the arbitration award, but argues the case should not have gone to arbitration because the agreement foreclosed it.

The difficulty with this argument is that appellant's proper remedy would have been to move to vacate the award, once made,

---

[2] Component Systems v. Murray Enterprises of Minn. 300 Minn. 21, 25, 217 N. W. 2d 514, 516, citing In re Mayo Realty Corp. 68 N. Y. S. 2d 843 (1947); Heidelberger v. Cooper, 300 N. Y. 502, 89 N. E. 2d 21 (1949); Airways Supermarkets Inc. v. Santone, 277 App. Div. 722, 102 N. Y. S. 2d 649 (1951); Emporium Area Joint School Authority v. Anundson Const. & Bldg. Supply Co. 402 Pa. 81, 166 A. 2d 269 (1960); Nix v. Spector Freight System, Inc. 62 N. J. Super. 213, 162 A. 2d 590 (1960).

on the ground that the arbitrator exceeded his powers under Minn. St. 572.19. Not having done so, there is now nothing to review on appeal and it must fail.

Affirmed.