Cleve BEEBOUT, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE CO., et al., Respondents.

No. C9–84–1544.

Court of Appeals of Minnesota.

March 26, 1985.

Review Denied May 31, 1985.

James R. Anderson, Marshall, for appellant.

James B. Wallace, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondents.

Heard, considered and decided by WOZ-NIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Appellant Cleve Beebout sustained crop damage from several different hailstorms during the summer of 1979. He filed a claim with his insurer, St. Paul Fire & Marine. The claim was later submitted to arbitration as provided in the insurance policy, and the arbitrators determined the damages to be $36,580. The trial court set aside the arbitration award and ordered a trial on the damages issue. At trial the jury determined the damages to be an additional $9,510, for a total of $46,090. Beebout appeals, claiming the evidence is insufficient to support the verdict. The insurance company filed a notice of review, contending the trial court erred in setting aside the original arbitration award. We reverse and reinstate the arbitration award.

## FACTS

During the summer of 1979, four separate hailstorms hit Beebout's fields. Two adjusters examined the fields using a procedure developed by the National Crop Insurance Association, in which a sample of plants from each field is examined for direct damage and defoliation and the results are extrapolated to arrive at an estimate for the entire field. The parties did not agree on the damage estimates.

On August 17 one or both of the parties invoked the arbitration clause of the insurance policy. The policy required each party to pick a "competent" appraiser, who in turn were to pick a "competent and disinterested umpire." Beebout chose Ernest Johnson based on the advice of Robert Nolting, the insurance agent who sold him the policy. Johnson is a retired county agent who was a friend of Beebout's and had performed hail adjusting in the past. St. Paul Fire & Marine chose Harold Willis, a former 24-year employee. David Noetzel

was chosen to be the neutral umpire. The arbitrators examined all the fields on September 1.

Using the sampling method again, the two arbitrators chosen by the parties agreed on the loss figures for all the fields. The umpire was never called upon to make a tie-breaking vote. The arbitrators awarded Beebout $36,580.

Beebout then retained Dale Hicks, an agronomist with the University of Minnesota, to evaluate the fields. Hicks used the same method to estimate the damage, but only four fields remained unharvested at the time of his examination. Hicks basically agreed with the estimates of the arbitrators except for one field, for which his estimate was significantly higher.

In November 1979 Beebout began this action. He moved to set aside the arbitration award, and St. Paul Fire & Marine moved for summary judgment on the basis of the arbitration award. In September the trial court set aside the arbitration award on the ground that the difference between the award and the loss claimed in Beebout's complaint ($169,429) was sufficient to conclude that the award was so inadequate as to amount to unintentional fraud. The court ordered a trial on the damages issue and stated in its memorandum that if the damages found by the jury were grossly in excess of the arbitration award, the jury verdict would be adopted, but if the damages found by the jury were not grossly in excess of the award, the arbitration award would be reinstated. The court said that it would determine as a matter of law whether the jury verdict or the arbitration award would stand.

Beebout accepted $36,580 from St. Paul Fire & Marine as a tender in lieu of judgment in June 1980, subject to his right to dispute the merits. The damages issue was tried to a jury in September 1983. The evidence presented at trial basically consisted of testimony regarding the different methods of estimating the damage. Beebout compared past average yields and actual yields from damaged crops; the adjust-

ers and two of the arbitrators testified about the insurance company's method.

The following chart summarizes the percentages of loss estimated by Beebout, the arbitrators, the umpire, Dale Hicks, and the jury for each field:

|    | Beebout | Arbitrators | Umpire | Hicks | Jury |
|----|---------|-------------|--------|-------|------|
| 1  | 93.75   | 15.7        | 5.0    | --    | 15.7 |
| 2  | 82      | 0.0         | 0.0    | 5.0   | 0.0  |
| 3  | 50      | 7.0         | 7.0    | --    | 7.0  |
| 4  | 54.5    | 5.0         | 5.0    | 7.0   | 5.0  |
| 5  | 88.7    | 20.0        | 20.0   | --    | 20.0 |
| 6  | 80.0    | 0.0         | 0.0    | --    | 0.0  |
| 7  | 96.3    | 30.0        | 5.0    | --    | 30.0 |
| 8  | 81.5    | 25.0        | 25.0   | --    | 25.0 |
| 9  | 82.4    | 25.0        | 25.0   | --    | 25.0 |
| 10 | 85.0    | 10.0        | 0.0    | --    | 10.0 |
| 11 | 87.1    | 20.0        | 40.7   | 53.0–59.0 | 56.0 |
| 12 | 82.7    | 12.5        | 17.5   | 16.0  | 25.0 |

The trial court determined that the arbitration award for fields 11 and 12 were grossly inadequate compared with the jury verdict and ordered judgment for Beebout for an additional $9,510 based on the policy coverage per acre.

## ISSUE

Did the trial court err in setting aside the arbitration award, ordering a jury trial on damages, and then ordering judgment based on the verdict?

## DISCUSSION

■ St. Paul Fire & Marine contends that the trial court erred in setting aside the award solely on the ground that the parties' disagreement about the amount of damage constitutes an unintentional fraud. In the absence of an agreement to the contrary, written agreements to arbitrate are interpreted with reference to the Uniform Arbitration Act. *Wacker v. Allstate Insurance Co.*, 312 Minn. 242, 251 N.W.2d 346 (1977). The parties agree that the act applies to the arbitration clause in this hail insurance policy.

A trial court is authorized to vacate an arbitration award in Minn.Stat. § 572.19, subd. 1 (1982). The grounds specified in the statute for vacating an arbitration award include:

(1) * * * corruption, fraud, or other undue means; [or]

(2) * * * evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party * * *.

Minn.Stat. § 572.19, subd. 1(1), (2) (1982).

■ There is a strong policy in Minnesota favoring arbitration, and judicial intervention has been carefully circumscribed. *Ramsey County v. AFSCME Council 91*, 309 N.W.2d 785, 790 (Minn.1981). It is well settled under Minnesota law that once arbitrability is established, the role of the judiciary does not encompass a re-examination on the merits. *Id.* An award is not to be invalidated because of mere inadequacy. To invalidate an award, the inadequacy must be so gross as to justify a legitimate inference and finding of fraud. *Mork v. Eureka-Security Fire & Marine Insurance Co.*, 230 Minn. 382, 391, 42 N.W.2d 33, 38–39 (1950) (quoting *Baldinger v. Camden Fire Insurance Association*, 121 Minn. 160, 162, 141 N.W. 104, 105 (1913)). Fraud must be established by "clear allegations and proof." *Mork v. Eureka Security*, 230 Minn. at 391, 42 N.W.2d at 38.

The trial court's memorandum explaining why the arbitration award was vacated says:

In the interests of justice, the tremendous difference between the appraiser's award and the claim of loss being asserted by the plaintiff as set out in the amended complaint, and as evidenced by the content of the plaintiff's deposition, are sufficient to conclude that the appraisal award is so inadequate as to amount to fraud. The Court is not concluding that any intentional fraud was perpetrated by the appraisers, but rather that from the complaint it is reasonable to conclude that the appraisers so completely failed to adequately arrive at the losses sustained by plaintiff that it must be viewed in the same light as though fraud had in fact been perpetrated. When such is the circumstance, the appraisers' award must be vacated. *See Mork & Associates, Inc. v. Jackson*, 304 Minn. 394, 231 N.W.2d 303 (1975); *Mork*

v. *Eureka-Security Fire & Marine Insurance Co.*, 230 Minn. 382, 42 N.W.2d 33 (1950); *Baldinger v. Camden Fire Insurance Association*, 121 Minn. 160, 141 N.W. 104 (1913).

These cases do not support the trial court's conclusion that the arbitration award could be set aside based merely on allegations that the award was so inadequate as to amount to unintentional fraud. In *Mork & Associates v. Jackson* the court refused to set aside an arbitration award because the plaintiff failed to establish fraud by clear allegations and proof. In *Mork v. Eureka-Security* there was a trial on the liability issue, and the parties stipulated to actual damages. Therefore, there was some agreed-upon basis on which to measure the adequacy of the award. Finally, in *Baldinger v. Camden* there was proof of malfeasance in that the arbitrator did not have the expertise necessary to evaluate the loss.

■ In the present case the arbitrators chosen by the parties were experienced and capable of firm, independent judgment. The neutral umpire was highly qualified. There was nothing in the record to support an inference of fraud, and the mere allegation of an inadequate award is insufficient. Thus, we hold that there was no statutory ground on which to vacate the arbitration award.

Beebout contends, however, that the disparity in the damage estimates, combined with wrongdoing on the part of the insurance company, mandated vacation of the arbitration award. The record shows that Jerry Brazil, the agricultural field supervisor for St. Paul Fire & Marine, advised Beebout to pick a disinterested arbitrator, "not a family member or merchant normally doing business" with him. The policy required each side to pick a competent appraiser; only the umpire was specifically required to be disinterested. In addition, Brazil suggested that the arbitrators pick an umpire from the University of Minnesota crop research division, and he later suggested Noetzel's name to Harold Willis. Willis asked Ernest Johnson if he agreed.

Later Brazil contacted Noetzel and asked him to serve as the umpire, and his letter outlined the umpire's duties and the method of payment.

■ Although we view with disfavor these actions by the insurance company, in this case they do not demonstrate fraud or undue means. Beebout chose as his representative a personal friend, who testified that he represented only Beebout's interests during the arbitration. The only inference available from the record is that Ernest Johnson consented to Noetzel's appointment as the umpire and the insurance company's procedure in contacting him. Noetzel had no prior contacts with St. Paul Fire & Marine. The arbitrators were competent, and the neutral umpire was disinterested within the meaning of the policy. In other cases contacts with a neutral umpire might justify an inference of undue means, but here they do not. *See Crosby-Ironton Federation of Teachers, Local 1325 v. Independent School District No. 182*, 285 N.W.2d 667 (Minn.1979); *Northwest Mechanical, Inc. v. Public Utilities Commission*, 283 N.W.2d 522 (Minn.1979). To guard against such an inference, these contacts should be made only by the arbitrators themselves or by the parties' counsel by agreement.

Because we hold that the trial court erred in vacating the arbitration award, we do not reach the other issues raised on appeal. We note, however, that there is no provision in the Uniform Arbitration Act authorizing a trial court to order a jury trial on any issue. After vacating an award on statutory grounds, the Act authorizes the court to order a rehearing before new arbitrators chosen as provided in the agreement or, in the absence thereof, before arbitrators appointed by the court. *See* Minn.Stat. § 572.19, subd. 1 (1982). However, neither party objected to trial on this ground. The court's order was doubtless dictated by the fact that the crops in question had already been harvested. There is no effective difference between rearbitration and trial in such a case because the duties of arbitrators would be

identical to those of a jury, e.g., to evaluate the evidence of experts and others who had seen the crops before harvest.

Beebout argues that the evidence is insufficient to sustain the verdict, essentially because he says the sampling method is less reliable in adjusting multiple losses than his method of comparing yields. We note only that both methods are admissible given appropriate foundation; the weight of the evidence is for the finder of fact.

## DECISION

The trial court erred in vacating the arbitration award based on mere allegations that the award was inadequate.

Reversed.