**R.M. BENNETT HEIRS, et al.,**
**Respondents,**

v.

**ONTARIO IRON COMPANY, et al., Appellants.**

No. C9-88-676.

Court of Appeals of Minnesota.

Aug. 9, 1988.

Michael R. Cunningham, John S. Crouch, Gray Plant Mooty Mooty & Bennett, Minneapolis, William J. Cosgriff, Doherty Rumble & Butler, St. Paul, for respondents.

Shane H. Anderson, Mackall Crounse & Moore, Minneapolis, for appellants.

Heard, considered and decided by RANDALL, P.J., and MULALLY and LESLIE,* JJ.

## OPINION

RANDALL, Judge.

In July 1978 the parties[1] entered into a mining lease containing a specific and man-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. The plaintiffs in district court are the land owner lessors, who are respondents on appeal. The defendants at the district court level are the mining company lessees, who are appellants on appeal.

datory arbitration provision governing disagreements over the terms of the lease. On October 29, 1987, respondents sued appellants claiming past improper calculation of royalties owed them under the lease. Appellants served a demand for arbitration and moved to stay the court proceeding pending arbitration of the dispute. The trial court denied appellants' motion and held the arbitration provision inapplicable to the issue in dispute, which is the amount of money owed lessors by lessees. Appellant lessees request the trial court be reversed and the parties ordered to proceed with arbitration.

We reverse and remand with directions to proceed with arbitration pursuant to the lease agreement.

## FACTS

Respondent lessors (Bennett) and appellant lessees (Ontario) entered into an operating lease for property in St. Louis and Itasca Counties. Ontario had the right to mine and remove iron ore from the property. Royalty payments increased or decreased depending upon the amount of oxide pellets produced and shipped. Ontario agreed to pay Bennett certain minimum royalties on a quarterly basis.

In March 1985 Bennett informed Ontario that, in their opinion, the minimum royalty payments were being improperly calculated and the lessees were receiving less money than they were entitled to. Ontario disagreed, and suggested placing the issue before a disinterested third party for determination. No other action was taken by either party at that time. Following that exchange of differences on whether the royalty calculations were correct, Ontario tendered (under its version of what constituted proper calculation) and Bennett accepted, over $3,000,000 in payments during the next two years. In October 1987, Bennett repeated its claim that royalty payments were being improperly calculated and commenced litigation in district court for back payments.

Ontario served a demand for arbitration and nominated an arbitrator. Ontario also moved the court to stay the action pending arbitration. The trial court denied Ontario's motion and held the dispute not subject to the arbitration provision in the lease.

## ISSUES

1. Did the trial court err by determining that this dispute over the calculation of royalty payments was not subject to arbitration?

2. Did the trial court err by determining, in the alternative, that Ontario waived its right to make a timely demand for arbitration?

## ANALYSIS

### I.

*Scope of the lease arbitration provision*

■ The language of the arbitration agreement determines whether the parties intended to arbitrate a particular issue. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). If the controversy sought to be arbitrated is outside the scope of the arbitration provision, the court may interfere and protect a party from being compelled to arbitrate. *Atcas v. Credit Clearing Corporation of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972).

■ A reviewing court is not bound by the trial court's interpretation of an arbitration agreement. *Millwrights Local 548 v. Pugleasa Co.*, 419 N.W.2d 105, 107 (Minn.Ct.App.1988). On appeal, this court independently determines whether the proper interpretation was given to the language used by the parties. *Id.*

Article XIV of the parties' lease agreement states:

In case *any disagreement or controversy shall arise between the parties hereto relative to the observance or fulfillment of the terms and obligations hereof by either party, then such controversy or disagreement shall be determined by arbitration.* Either party may within thirty (30) days after such disagreement arises demand arbitration thereof and the party or parties making such demand shall in writing specify the matter to be

submitted to arbitration and at the same time choose and nominate some disinterested competent person to act as an arbitrator. (Emphasis added).

Ontario claims that a dispute over the proper computation of royalties falls within this provision.

Bennett argues that Article VXIII of the lease controls. The article, under the subheading Action By Lessors, states:

It is recognized that the Lessors under this Agreement consist of multiple owners of undivided interests in the Premises and it is, therefore, agreed that any act to be performed by Lessors hereunder or any act required of Lessors hereunder in carrying out the terms and conditions of this Agreement whether in the nature of an approval, consent, demand or notice, or any act which shall relate to the modification of this Agreement maybe accomplished on behalf of the Lessors by written instrument or instrument executed by Lessors owning eighty percent (80%) or more of the undivided total mineral interest of all Lessors in the Premises * * *. *Notwithstanding the foregoing, any owner of a Lessor's mineral interest may maintain an action for the recovery of his proportionate share of the rents or royalties stipulated herein;* provided, however, that payment by Lessee to any representative designated by Lessors shall at all time be deemed to be proper payment of the share of the royalties of each of the Lessors under this Agreement. (Emphasis added).

Pursuant to Article XIV, Bennett agreed to submit all controversies relative to the observance of lease terms to an arbitration. The parties' lease agreement sets out in detail how royalty payments are to be calculated, what minimum royalty payments should be, and the formula for escalating those payments. It appears basic to us that royalties, and how they are to be calculated, constitute the essence of a mineral lease between a landowner and a mining company. The landowner allows the mining company to extract minerals from his land and, in turn, receives payment for that privilege based on the amount of minerals taken. That understanding is the *sine qua non* of this lease.

■ Other matters in this lease, while not window dressing, are not the primary purpose. The core of this lease is how much money Ontario has to pay to Bennett. Therefore, we hold that the disagreement over money comes squarely within the intent of Article XIV in the lease, and by definition constitutes a "disagreement * * * relative to * * * fulfillment of the terms * * *." *See Niazi v. St. Paul Mercury Insurance Co.,* 265 Minn. 222, 231, 121 N.W.2d 349, 356 (1963) (parties to an arbitration agreement have an obligation to make a fair effort to carry out the provisions of the arbitration agreement and to accomplish the real object of the contract).

Bennett argues Article XVIII reflects the parties' intent that the proper way to recover royalties is by litigation, not by arbitration. *See Har–Mar, Inc. v. Thorsen & Thorshov, Inc.,* 300 Minn. 149, 153, 218 N.W.2d 751, 754–55 (1974) (an arbitration proceeding is not an "action"). We disagree. The purpose of Article XVIII is to allow 80% of the lessors to bind all interests in the property; but then allow a minority of lessors to recover their proportionate share of royalties if the majority retains more than its share. However, the present dispute does not involve a disagreement between lessors. It is a straight disagreement between lessors and lessees over how much royalties are to be paid. Article XVIII does not apply to this dispute. If Article XVIII had the broad understanding that Bennett gives it, Article XIV would become superfluous. There is little else of substance in the lease, except royalty payments, that would be the source of disagreement. Article XIV and Article XVIII are clear. Based upon a plain reading, the provisions do not conflict with each other, and Article XIV controls lessor/lessee payment disputes.

II.

*Waiver of the right to demand arbitration*

The trial court also held that Ontario waived its right to arbitrate by not de-

manding arbitration within thirty (30) days of when the dispute initially arose in 1985. The court found that the parties' disagreement commenced two years before Bennett brought this lawsuit in October 1987.

Whether a party has waived its contractual arbitration rights depends upon the party's intent. *County of Hennepin v. Ada–Bec Systems,* 394 N.W.2d 611, 613 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986). Ontario's immediate response to Bennett's complaint was a demand for arbitration and a motion to stay proceedings. Ontario argues their conduct demonstrates an unchanging intent to retain their right to arbitrate.

■ Considering the circumstances and the dialogue between the parties in 1985, Ontario had no responsibility, at the risk of waiver, to demand arbitration in 1985 when Bennett first raised a question over money. The dispute over royalty calculation was raised by Bennett. Ontario's response was that its calculations were correct, and they were not going to make any changes. At that point, unquestionably, *Bennett* had the right to demand arbitration. Bennett did not do so, and continued to accept whatever payments Ontario sent. Thus, until Bennett's complaint was filed, Ontario had no reason to demand the benefit of the arbitration provision in the lease. Upon the commencement of the lawsuit, Ontario made a demand for arbitration within 30 days.

We hold that Ontario brought a timely demand for arbitration. To hold otherwise would allow Bennett to sit on their rights to demand arbitration for more than 30 days, refuse to bring a demand for arbitration within that time, and then contend Ontario waived their right to arbitrate.

Bennett also claims Ontario failed to nominate a disinterested competent person to act as arbitrator. Ontario acknowledges that their named arbitrator had been a member of a law firm that provided legal services for some of appellants. The arbitrator did, however, disclose his past affiliation to all the parties involved.

■ Arbitrators should disclose the existence of any interests or relationships which are likely to affect their impartiality or which might reasonably create the appearance they are biased against one party or favorable to another. *Safeco Insurance Co. v. Stariha,* 346 N.W.2d 663, 666 (Minn. Ct.App.1984) (quoting the *Code of Ethics for Arbitrators in Commercial Disputes* (1977)). The arbitrator in question did this.

■ Ontario points out that, within the limited scope of appeal of arbitration awards, claims of fraud or pecuniary self-interest against an arbitrator are among appealable issues, and thus Bennett is protected. We agree. The question of who can act as an arbitrator is not before us, and would be purely advisory at this point as, based on the trial court's ruling, there are no arbitrators and there is no arbitration decision before this court (the issue is just Ontario's right to arbitrate). We merely note that Bennett's claim that Ontario failed to nominate an arbitrator in good faith is not a basis to ignore Article XIV of the lease. If aggrieved later, Bennett retains the right to use the judicial process.

### DECISION

The trial court erred by determining that the dispute over royalty payments did not come within the scope of the arbitration provision. This matter is remanded to proceed with arbitration pursuant to the lease.

Reversed and remanded.