MICHAEL–CURRY COMPANIES, INC., Appellant,

v.

KNUTSON SHAREHOLDERS LIQUIDATING TRUST, et al., defendants and third-party plaintiffs, Respondents,

v.

John A. CURRY, et al., Third–Party Defendants.

No. C6–88–1509.

Court of Appeals of Minnesota.

Jan. 17, 1989.

Review Granted March 17, 1989.

Marvin T. Fabyanske, Gary F. Albrecht, Fabyanske, Svoboda, Westra & Davis, St. Paul, for appellant.

John L. Devney, J. Patrick McDavitt, Mark J. Ayotte, Briggs and Morgan, St. Paul, for respondents.

Heard, considered and decided by NORTON, P.J., and FORSBERG and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Appeal arises from the trial court's order denying a motion to compel arbitration and staying arbitration pursuant to Minn.Stat. § 572.26, subd. 1(1) and (2) (1986). We reverse and remand.

## FACTS

On September 16, 1985, Knutson Companies, Inc. (KCI), the predecessor of respondent Knutson Shareholders Liquidating Trust (Trust), entered into an Agreement (Agreement) to sell the stock of D & L Building, Inc. (D & L), a Wyoming construction company, to appellant Michael–Curry Companies, Inc. (MCCI). The Agreement contained an arbitration clause stating "[a]ny controversy or claim arising out of, or relating to, this Agreement, or the making, performance or interpretation thereof, shall be settled by arbitration in Minneapolis, Minnesota in accordance with the Rules of the American Arbitration Association." On December 27, 1985, the parties executed an Amendment to the Agreement (Amendment) containing the Trust's guaranty of profitability which provided that MCCI would earn a minimum profit of $125,000 on the ongoing D & L construction projects. The Amendment also contained a provision limiting the Trust's indemnity of MCCI to $250,000.

The parties concede that the Agreement and Amendment together constitute the parties' entire agreement. The Agreement required MCCI to take over D & L's unfinished construction projects and work toward their completion. MCCI, through D & L, took over the unfinished projects. However, MCCI alleges it not only failed to turn a profit on these projects, but experienced major losses. MCCI informed the Trust of the losses and demanded reimbursement under the terms of the profit guaranty in the Amendment. The Trust refused and MCCI submitted an arbitration demand in accordance with the arbitration clause in the Agreement. The Trust filed an answer to the demand, claiming that any arbitration agreement between the Trust and MCCI was null and void due to MCCI's fraud in the inducement. MCCI then filed a breach of contract claim in the trial court seeking damages of $3,900,000 and interest, attorney fees and expenses. MCCI also sought a temporary injunction prohibiting the distribution of Trust assets to beneficiaries until MCCI's claim on the profit guaranty was resolved.

The trial court denied the motion for temporary injunction and MCCI appealed to this court. This court reversed the denial order and remanded for issuance of an injunction on May 24, 1988. The trial court then issued a temporary injunction prohibiting distribution of Trust assets to the beneficiaries.

The Trust's answer to MCCI's complaint listed as its seventh defense that "plaintiff's claims are barred by fraud in the inducement of the Amendment upon which it bases its claims." In a counterclaim, the Trust alleged that it was induced to enter into the Amendment in reliance upon representations of MCCI concerning MCCI's conduct of the business and status of the D & L construction projects MCCI had taken over. The Trust further alleged that MCCI's representations concerning the status of the projects which induced the trustees to enter into the Amendment were false and misleading. The Trust pleaded that MCCI's alleged fraudulent and misleading representations caused the Trust to suffer damages estimated at $50,000 and therefore the profitability guaranty was null and void under doctrines of both law and equity.

While the temporary injunction issue was being reviewed in this court, MCCI moved the trial court for an order compelling arbitration. MCCI argued that the plain language of the arbitration clause evinces a clear intention of the parties to arbitrate claims arising out of the Agreement.

The Trust filed a cross-motion for an order staying arbitration pursuant to Minn. Stat. § 572.09(b) pending a resolution by the trial court of the Trust's fraud claim. The Trust argued that the arbitrability of a claim of fraud in the inducement must be determined by the trial court before com-

pelling arbitration. The Trust asserted that the parties had not specifically agreed to arbitrate the issue of fraud in the inducement, nor did the language in the Agreement so comprehend, and thus arbitration should be stayed and the fraud issue tried.

MCCI filed a memorandum opposing the Trust's cross-motion in February 1988. In the memorandum, MCCI asserted that the Trust's fraud in the inducement claim was subject to arbitration, not litigation. MCCI asserted that the arbitration clause in the parties' Agreement was sufficiently broad to encompass fraud claims and that the parties expressed an intention to specifically arbitrate such claims. MCCI further asserted that by insufficiently pleading its fraud claim and failing to seek rescission of the entire Agreement, the Trust was not procedurally entitled to try the fraud claim.

The trial court filed an order compelling arbitration on March 1, 1988. The order contained no findings or conclusions as to the intended disposition of the fraud claim. Respondents petitioned this court for discretionary review of the trial court's order compelling arbitration. This court denied discretionary review and remanded the matter to the trial court for a ruling on the disposition of the Trust's fraud claim.

In an order dated June 14, 1988, which is the subject of this appeal, the trial court concluded it would hear the Trust's claim of fraud in the inducement because the contract between MCCI and the Trust did not include any specific agreement between the parties to arbitrate a claim of fraud in the inducement.

The trial court also found that the Trust properly pleaded a claim of fraud and sought to rescind its contract with MCCI. Although appellant challenges this finding, we need not address this issue because of our holding that the parties' Agreement is sufficiently broad to comprehend arbitration of a claim of fraud in the inducement.

## ISSUE

Did the trial court err in finding the arbitration clause in the parties' contract is not sufficiently broad to comprehend arbi-

tration of the issue of fraud in the inducement?

## ANALYSIS

1. Scope of Review.

■ The language of an arbitration agreement determines whether the parties intended to arbitrate a particular issue. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). A reviewing court is not bound by the trial court's interpretation of an arbitration agreement. *Millwrights Local 548, United Brotherhood of Carpenters and Joiners, AFL–CIO v. Robert J. Pugleasa Company, Inc.*, 419 N.W.2d 105, 107 (Minn.Ct.App.1988). On appeal, this court independently determines whether the proper interpretation was given to the language used by the parties. *Id.; R.M. Bennett Heirs v. Ontario Iron Co.*, 426 N.W.2d 921 (Minn.Ct.App.1988).

Minnesota has enacted the Uniform Arbitration Act.

> One of the fundamental objectives of the act was to encourage and facilitate the arbitration of disputes by providing a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions, including the labor-management field. The language of the act emphasizes an intention to change the common-law policy of judicial hostility toward arbitration to one favoring arbitration. Contrary to decisions found in many states, it specifically makes a written agreement to arbitrate effective whether relating to existing or future disputes.

*Layne–Minnesota Co. v. Regents of University of Minnesota*, 266 Minn. 284, 287–88, 123 N.W.2d 371, 374 (1963).

2. Minnesota Test for Arbitration of Fraud in the Inducement.

Minn.Stat. § 572.08 (1986) makes arbitration agreements enforceable "save upon such grounds as exist at law or in equity for the revocation" of the contract. "[I]f the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to the determination of

the issue so raised * * *." Minn.Stat. § 572.09(a) (1986). If fraud vitiating the primary subject matter of the contract is proved, it also vitiates an arbitration clause within the contract. *Atcas v. Credit Clearing Corp. of America,* 292 Minn. 334, 197 N.W.2d 448, 456 (1972). Thus, by alleging fraud in the inducement of the Agreement, the Trust is denying the existence of the agreement to arbitrate pursuant to Minn. Stat. § 572.09(a). Where such fraud in the inducement is alleged, the trial court must determine whether the parties agreed to arbitrate that issue. *Id.*

■ Whether a claim of fraud in the inducement is a proper subject for arbitration is dependent upon the intention of the parties as expressed in the language of the arbitration agreement. *Thayer v. American Financial Advisers, Inc.,* 322 N.W.2d 599, 602 (Minn.1982) (citing *Atcas v. Credit Clearing Corp. of America,* 292 Minn. 334, 197 N.W.2d 448 (1972)). The *Atcas* court examined the language of the parties' agreement under two alternate requirements to determine if the issue of fraud in the inducement is arbitrable. If the language in the arbitration agreement evinces a specific intent to arbitrate the issue of fraud in the inducement, *or if the language is sufficiently broad to comprehend that the issue of fraudulent inducement be arbitrated,* then that issue must be arbitrated. *Atcas,* at 347, 197 N.W.2d at 456 (emphasis added).

■ The arbitration clause in the Agreement reads as follows:

13.01 *Arbitration.* Any controversy or claim arising out of, or relating to, this Agreement, or the *making,* performance or interpretation thereof, shall be settled by arbitration * * *.

(emphasis added). The trial court found that MCCI and the Trust had not "specifically agreed to arbitrate a claim of fraud in the inducement and the language used in the contract does not comprehend arbitration of that issue."

While the trial court concluded that absent "specific references" or "explicit language in the contract" regarding arbitration of fraud claims, the Trust's claim of fraud in the inducement was not subject to arbitration, the court included no discussion concerning why it concluded that the contract was not sufficiently broad to comprehend arbitration of the fraud issue.

We note that MCCI did not expressly argue on motion that the "making" language in the Agreement was distinguished from the language considered in *Atcas.* MCCI simply referred to the breadth of the Agreement and argued that it contemplated arbitration of all claims, including fraud. In its motion, MCCI principally maintained that the Trust had failed to meet the procedural requirements of *Atcas.* On appeal, however, MCCI argues more forcefully that the language of its arbitration clause is broader than the language considered in *Atcas, Thayer,* and other Minnesota decisions holding that fraud issues were not arbitrable.

In *Atcas,* the supreme court held that the language, "[a]ny controversy whatsoever, relating to this Agreement shall be settled by arbitration" expressed no intent by the parties to arbitrate the issue of fraud in the inducement, "nor [did] the language used in the agreement comprehend arbitration of that issue." *Atcas,* at 347–48, 197 N.W. 2d at 456. The supreme court examined at length the language of various arbitration clauses at issue in other jurisdictions, some of which had been held to comprehend fraud, and some which had not. *Id.* at 342–44, 197 N.W.2d at 453–54. It noted that different courts have reached contrary conclusions when interpreting identical agreements, and that the question of just what language is sufficiently broad to compel arbitration is of great significance. *Id.* Thus, breadth and not solely specificity of intent in the language of an arbitration agreement must be considered by a court in deciding a motion to compel arbitration.

In *Thayer,* the supreme court considered whether the language "any claim, grievance or controversy between us arising out of your business or this agreement shall be settled by arbitration," was broad enough to comprehend arbitration of a fraud claim. *Thayer,* 322 N.W.2d at 602. The court in

applying the requirements of *Atcas* found it was not. *Id.* at 603.

In *Freeman v. Duluth Clinic,* 334 N.W. 2d 626 (Minn.1983) the language "[a]ll disputes or differences that may arise under [the] agreement," was held to be not inclusive of a claim relating to the rescission of the contract for lack of consideration. *Id.* at 629. Because no specific reference was made to the issue of lack of consideration and the language was no broader than in *Atcas,* the supreme court held that arbitration would not obtain.

More recently, this court held that the language, "Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement," did not evince a clear intent by the parties to arbitrate the issue of fraud in the inducement. *NCR Credit Corp. v. Park Rapids Leasing Associates,* 349 N.W.2d 867, 868 (Minn.Ct.App.1984). This court concluded that the above language "does not cover conduct *prior to* the agreement." *Id.* (emphasis added). It should be noted that in *NCR Credit,* the parties specifically agreed to arbitrate claims of misrepresentation "arising out of or related to" the principal contract. This quoted language is no broader than that considered in *Atcas* and *Thayer.* Thus, even though the parties specifically referred to misrepresentation, they did not use language broad enough to cover conduct prior to the agreement, such as fraud in the making of the contract.

### 3. Cases From Other Jurisdictions.

Decisions in the United States Supreme Court, other state appellate courts, and dicta from *Atcas* are instructive on how to interpret the term "making" in an arbitration agreement. As appellant correctly notes, a claim that a party was fraudulently induced to enter into an agreement necessarily relates to the circumstances and events surrounding the contract's formation or making. *See Northwestern State Bank, Osseo v. Foss,* 293 Minn. 171, 197 N.W.2d 662, 665 (1972) ("Rescission denies or unmakes the contract.").

The *Atcas* court itself used the phrase "the making * * * of the contract * * * was induced by fraud," *Atcas,* 292 Minn. at 347, 197 N.W.2d at 455–56, when discussing another issue. The *Atcas* court cited *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), for the rule that under the Federal Arbitration Act, courts may decide the issue of fraudulent inducement only if the fraud is alleged to have induced the arbitration clause itself, rather than the contract generally. *Atcas,* 292 Minn. at 346, 197 N.W.2d at 455.

State and federal courts applying the federal rule more freely compel arbitration of fraud claims because the parties rarely can claim that fraud induced them to agree to the arbitration clause itself. There is no authority in states like Minnesota, which do not follow the federal rule, interpreting the word "making" in an arbitration clause.

However, the word "making" contemplates the conduct of the parties prior to the formation of an agreement, such as was considered by this court in *NCR Credit.* Thus, a "claim of fraud in the inducement" is "an issue which goes to the *making* of the agreement." *See Prima Paint,* 388 U.S. at 403, 87 S.Ct. at 1805 (emphasis added).

In *Two Sisters v. Gosch & Co.,* 171 Conn. 493, 370 A.2d 1020, 1022 n. 2 (1976), the Supreme Court of Connecticut examined the following language in an arbitration clause: "Every * * * claim arising under * * * this contract * * * or with respect to the *making* or validity of this contract * * * shall be determined only by arbitration * * *." (emphasis added). The court held that it was "a broadly worded arbitration clause" which reflected "the parties' general desire to settle any disputes relating to their contract speedily and finally through arbitration, including claims of fraudulent inducement." *Id.* at 497, 370 A.2d at 1022–23; *see also Coleman v. National Movie Dine, Inc.,* 449 F.Supp. 945 (D.C.Pa.1978) (the language, "Any controversy * * * arising out of any aspect of the agreement, including the making thereof,"

held to comprehend issue of fraudulent inducement).

### 4. Conclusion.

The arbitration language in the Agreement before us is broader than the language considered in *Atcas, Thayer, Freeman,* and *NCR Credit.* Thus, we hold the use of the word "making" in the Agreement satisfies the second *Atcas* requirement because it includes claims relating to the formation of the Agreement, not merely claims "arising out of" or "related to" the Agreement.

Respondent argues that if the parties wanted claims of fraud in the inducement to go to arbitration they would have included a clause specifically stating so. However, there are other grounds for rescinding a contract in addition to fraud, e.g. lack of consideration, duress. To require a specific list of all possible claims relating to the rescission of a contract would be impractical. Also arguably, parties would be hesitant to enter into a contract where a party specifically suggests at the outset that fraud may be involved. Thus, we hold the arbitration clause in the parties' Agreement is broad enough to include the various events which cause recission including fraud in the inducement.

Finally, we note that arbitration has long held favored status under Minnesota law. *Ramsey County v. AFSCME Council 91,* 309 N.W.2d 785, 790 (Minn.1981); *Beebout v. St. Paul Fire and Marine Insurance Co.,* 365 N.W.2d 271 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985). The supreme court in *Atcas* stated clearly that "there is no reason why the parties cannot agree, if they wish to, that if a question arises as to whether the principal agreement was obtained by fraud, the question may be arbitrated" (citations omitted) 197 N.W.2d at 453. We believe the language of the arbitration clause before us evidences such an agreement.

### DECISION

We reverse the trial court and remand for an order compelling arbitration pursuant to the arbitration clause in the parties' purchase Agreement.

Reversed and remanded.

FORSBERG, Judge (dissenting):

I respectfully dissent. Minn.Stat. § 572.08 (1986) provides as follows:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Respondent has asserted as a defense a claim of fraud in the inducement which, if proven, would clearly rescind and/or revoke the contract. Therefore, the claim would not be subject to arbitration.

The supreme court in *Atcas v. Credit Clearing Corp. of America,* 292 Minn. 334, 197 N.W.2d 448 (1972) and subsequent cases (such as *Thayer v. American Financial Advisers,* 322 N.W.2d 599 (Minn.1982)) has been reluctant to allow fraud in the inducement to be subject to arbitration for very good reasons. First of all, it seems so clearly wrong to allow a fraudulently obtained contract to dictate the vehicle by which that very issue of fraud is determined. Moreover, the court stated in *Atcas:*

When the making of the agreement itself is put in issue, as is the result of a claim of fraud in the inducement, that issue is more properly determined by those trained in the law.

*Id.* 292 Minn. at 350, 197 N.W.2d at 457. Therefore, the supreme court has consistently stated that a clear intent must be shown to arbitrate fraud. It seems to this writer that to satisfy that requirement, the issue of fraud must be mentioned in the arbitration agreement as one of the issues to be arbitrated, otherwise it should be tried by the court.